UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

NORYS A. GONZALEZ,          )
                                    )
          Plaintiff,      )
                                    )
          v.          )   CASE NO. 1:10-cv-00899-DML-TWP
                                    )
MICHAEL J. ASTRUE,         )
                                    )
          Defendant.    )

# Entry on Judicial Review

Plaintiff Norys A. Gonzalez applied for Disability Insurance Benefits (DIB) under Title II of the Social Security Act on September 8, 2004, alleging that she has been disabled since May 30, 2003, because of problems stemming from a back condition and pain and because of depression. (*See* R. 62). Ms. Gonzalez's last insured status date was December 31, 2009. To be entitled to DIB benefits, she therefore must have been disabled on or before December 31, 2009. Acting for the Commissioner of the Social Security Administration, an administrative law judge ("ALJ"), after hearings held November 29, 2007, and May 23, 2008, found that Ms. Gonzalez was not disabled because she could perform her past relevant work as a child care monitor, sewing machine operator, or packer. The national Appeals Council denied review of the ALJ's decision on May 11, 2010, rendering the ALJ's decision for the Commissioner final. Ms. Gonzalez filed this civil action for judicial review under 42 U.S.C. § 405(g), which governs judicial review of DIB claims.[1]

---

[1]       The parties consented to the magistrate judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Ms. Gonzalez asks the court to reverse the ALJ's decision and remand for further proceedings on the grounds that the ALJ committed numerous errors in determining Ms. Gonzalez's residual functional capacity and in deciding that she was capable of performing her past relevant work. The court agrees that the decision must be reversed and remanded for reconsideration consistent with this order.

With respect to the RFC determination, the ALJ stated that he was adopting Dr. Richard Hutson's assessment of Ms. Gonzalez's functional capacity. Dr. Hutson is a board-certified orthopedic surgeon who testified as an independent medical consultant to the ALJ at the two administrative hearings. At the second hearing, Dr. Hutson added restrictions to Ms. Gonzalez's physical capabilities involving lifting on her right side and with her right hand. He also explained that his assessment of Ms. Gonzalez's functioning did not take account of whether her subjective complaints of pain and other symptoms (such as tingling and numbness in her right hand) were credible, and he testified that the subjective complaints were consistent with objective medical evidence. These matters were not addressed by the ALJ in his decision. The ALJ omitted the new restrictions from the RFC. The ALJ was required to consider Ms. Gonzalez's subjective complaints, even if Dr. Hutson was not. And though the ALJ found Ms. Gonzalez "not fully credible" in part because of a purported disconnect between the objective medical evidence and Ms. Gonzalez's complaints, the ALJ did not acknowledge that Dr. Hutson stated that her complaints were consistent with the medical evidence.

In deciding that Ms. Gonzalez was capable of performing her past relevant work, the ALJ improperly counted some work that Ms. Gonzalez had not performed at the level of substantial gainful activity, did not acknowledge or address evidence that other work required physical demands that were incompatible with Ms. Gonzalez's RFC, and for other work did not

sufficiently develop the record regarding the demands of the work to permit a rational decision that Ms. Gonzalez could perform it given her RFC.

Each of these errors is discussed more fully below.

<u>**Standard for Proving Disability**</u>

To prove disability, a claimant must show that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Ms. Gonzalez is disabled if her impairments are of such severity that she cannot perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis about whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in

severity to all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled. The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 416.960(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands that there be more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). This

limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004) (internal citations omitted). *See also Cannon v. Apfel,* 213 F.3d 970, 974 (7th Cir. 2000) (court reviews record as a whole, but does not substitute its judgment for the ALJ's judgment by reweighing evidence, or resolving conflicts, or reconsidering the facts or witness credibility). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir. 1997). A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel,* 131 F.3d 1228, 1234 (7th Cir. 1997), or based the decision on serious factual mistakes or omissions. *Sarchet v. Chater,* 78 F.3d 305, 309 (7th Cir. 1996).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). If an ALJ concludes that benefits should be denied, he must have first built an accurate, logical bridge between the evidence and his conclusion. *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). The ALJ need not address every piece of evidence in his decision, but he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## The ALJ's Findings

Ms. Gonzalez was born in February 1959, was 44 years old at the time of the alleged onset of disability on May 30, 2003, and was 49 years old at the time of the ALJ's decision. She is a native Spanish speaker, has extremely limited skills in reading and writing in the English language, and she required a Spanish-English interpreter at the administrative hearings and during some of her consultative examinations.

At step one, the ALJ determined that Ms. Gonzalez had worked after her alleged onset date of disability, first in 2004 as a packer at a factory for a short period, and then as a childcare monitor in 2004, 2005, and 2006, but that her average monthly earnings were below the level at which these jobs could be considered substantial gainful employment. (R. 16). At step two, the ALJ identified Ms. Gonzalez's degenerative disc disease of the lumbosacral spine, degenerative changes of the right shoulder, and depression as severe impairments that more than minimally affect her ability to perform basic work activities. (R. 16). At step three, the ALJ evaluated Ms. Gonzalez's impairments against listings 1.04 (disorders of the spine), 1.02B (major dysfunction of the shoulder joint), and 12.04 (affective disorders), and found that Ms. Gonzalez's impairments did not meet or medically equal any of the listings. In making his determinations at step three, the ALJ addressed the medical evidence regarding her physical impairments and relied on hearing testimony by Dr. Hutson. With respect to the mental health listing—listing 12.04—the ALJ evaluated the "B" criteria and explained the reasons he found the listing was not met.

The ALJ then determined Ms. Gonzalez's RFC. Adopting Dr. Hutson's testimony at the first hearing, the ALJ determined that Ms. Gonzalez has the RFC to perform a modified level of sedentary work. He found that she can:

lift and carry ten pounds occasionally and less than ten pounds frequently. She can stand and walk two hours of an eight hour workday. She can sit six hours. She needs to have a sit/stand option, to change position for up to five minutes each hour at the work station. . . . She cannot push or pull with the right upper extremity. She cannot kneel, crouch, crawl or climb ladders, ropes and scaffolds. She can occasionally balance, stoop and climb ramps and stairs. She cannot perform overhead reaching with the elbow above shoulder level on the right side. She should avoid concentrated exposure to extremes of cold, heat, wetness, humidity and vibration. She should avoid all exposures to hazards (moving machinery, heights, etc.). The claimant is moderately limited in her ability to understand, remember and carry out detailed instruction. The claimant is moderately limited in her ability to maintain attention and concentration for extended periods.

(R. 18).

At step four, the ALJ evaluated Ms. Gonzalez's past work. Based on Ms. Gonzalez's testimony and the testimony of the vocational expert, the ALJ determined that Ms. Gonzalez's RFC was consistent with the demands of her past work as (1) a sewing machine operator, both as she had performed it and as it is performed in the national economy; (2) a packer, both as she had performed it and as it is performed in the national economy; and (3) a child care monitor, as she had performed it but not as it is performed in the national economy. (R. 23). Accordingly, the ALJ determined at step four that Ms. Gonzalez was not disabled. (*Id.*).

The ALJ made "alternative" findings to support a conclusion that, assuming Ms. Gonzalez was not capable of performing her past relevant work, she still was not disabled because under step five of the sequential analysis she was capable of performing work that existed in sufficient numbers in the relevant economy. The Commissioner does not defend the alternative step five decision, the step at which he bears the burden of proof. Therefore, the court will not decide whether the ALJ's "alternative" findings at step five are supported by substantial evidence and would thus require affirmance even if the ALJ erred at step four. In other words, the ALJ's decision will stand or fall at step four.

## Analysis

### I.    The ALJ's decision regarding Ms. Gonzalez's RFC does not include all of the limitations the ALJ otherwise stated were appropriate.

Before deciding whether a claimant is capable of performing her past relevant work or, if she is not, whether she is capable of performing other work, the ALJ must first determine the claimant's RFC.  The RFC delineates the most that the claimant is able to do in a work setting given all of the physical and mental limitations resulting from her impairments, severe or not, that are supported by evidence in the record.  *See* 20 C.F.R. § 404.1545.  The ALJ must consider all relevant evidence, including any statements from any of the claimant's medical sources regarding the claimant's abilities and statements from the claimant regarding any limitations because of her symptoms, including pain.  *Id.* § 404.1545(a)(3).

Ms. Gonzalez's challenges to the ALJ's RFC focus on his failure to include all of the physical limitations supported by the evidence concerning her right side upper extremity impairments, from her right shoulder, down her arm, including the elbow, and to her right hand. Although she also argues that the ALJ did not properly take account of her hearing loss and an ankle reflex issue, she did not develop these arguments or point to any functional limitations resulting from those conditions that the ALJ should have included in his RFC.  Further, contrary to Ms. Gonzalez's argument, the ALJ did evaluate the clinical findings regarding carpal tunnel syndrome and mild ulnar nerve irritation.  (*See* R. 21).  In that regard, the ALJ explained that he credited work restrictions described by Dr. Hutson.

The ALJ explained that, after carefully considering the entire record:

> I adopt Dr. Hutson's assessment as the claimant's physical residual functional capacity of record.  I find the limits on lifting and use of the right upper extremity for reaching adequately accommodate the claimant's right shoulder

impairment.  I find limiting the claimant to two hours of walking during the workday and giving her the sit/stand option accommodates her residual back impairment.

(R. 22).

Although the ALJ expressly announced that he was adopting Dr. Hutson's assessment as Ms. Gonzalez's RFC, an examination of the RFC he actually employed at step four reveals that he implemented only the work restrictions that Dr. Hutson described at the *first* administrative hearing held November 29, 2007.  (Compare the ALJ's RFC, R. 18 and quoted *supra* at p.7, to Dr. Hutson's testimony at the first hearing, R. 543-545).  As shown below, the ALJ's RFC ignores the additional restrictions Dr. Hutson articulated at the second hearing, even though the ALJ said he was adopting Dr. Hutson's RFC assessment in its entirety.

After the first administrative hearing held November 29, 2007, the ALJ re-opened the record because of two new pieces of evidence:  (1) a Medical Assessment Form completed on December 10, 2007, by Dr. Souhaila Richardson, M.D., an internal medicine resident (R. 153-155), and (2) a Functional Capacity Evaluation, based on testing on December 27, 2007, prepared by St. Vincent Outpatient Physical Therapy (R. 148-152).  These assessments are medical source opinions by providers who examined Ms. Gonzalez.  They contain the providers' opinions regarding, among other things, Ms. Gonzalez's physical abilities to lift with her right arm and grip with her right hand.

 Before holding the second hearing, the ALJ sent this evidence to Dr. Hutson, who informed the ALJ in writing that the evidence did not change his opinion that Ms. Gonzalez's impairments did not meet or medically equal a listing and did not change his opinion regarding her appropriate work restrictions.  (R. 147).  Upon receiving this communication, Ms. Gonzalez asked for a second hearing to allow her to question Dr. Hutson regarding his views.  The second

hearing was held May 23, 2008, and the same witnesses who testified at the first hearing testified at the second hearing:  Dr. Hutson, Stephanie Archer, a vocational expert, and Ms. Gonzalez.

Ms. Gonzalez's attorney's questioning of Dr. Hutson at the second hearing elicited significant testimony regarding his opinion about the appropriate work restrictions for Ms. Gonzalez.  First, he confirmed that his medical opinion regarding appropriate work restrictions did not take into account Ms. Gonzalez's statements regarding subjective symptoms and resultant limitations, such as pain or tingling in her hands, because—according to Dr. Hutson— he is not permitted to consider whether a claimant's subjective allegations are true.  Second, Dr. Hutson stated that at least some of Ms. Gonzalez's statements regarding subjective symptoms are consistent with the objective medical evidence.  These points are addressed in the next section of the court's analysis.

Most significantly, and relevant to the ALJ's formulation of the RFC, Dr. Hutson added new work restrictions to the restrictions he had described at the first hearing.  After questioning from Ms. Gonzalez's attorney regarding certain objective medical evidence related to Ms. Gonzalez's right side and upper extremity, Dr. Hutson changed his original work restrictions, apparently to account for the fact that objective medical evidence supported further limitations in Ms. Gonzalez's abilities to lift and grasp on her right side.  He reviewed the findings from a right shoulder x-ray taken October 2, 2007 (R. 466) (noting "possible rotator cuff arthropathy secondary to impingement from prominent acromial spur and mild to moderate degenerative and hypertropic changes in the acromioclavicular joint") and a right shoulder x-ray taken a year earlier in June 2006 (R. 407) (noting "very prominent subcromial spur; clinical correlation for impingement).  He then stated that for any lifting that Ms. Gonzalez does with her right hand "that she not have her elbows out completely straight and try to lift because that's a long level

arm and would, could put tremendous stress and pressures on the shoulder area. So most of her lifting should be done at table level with her elbows bent." (R. 582). Dr. Hutson also lessened the amount of weight Ms. Gonzalez can lift frequently to "five pounds" (as opposed to anything less than 10 pounds that he described at the first hearing). (Compare R. 582 to R. 543). He clarified that Ms. Gonzalez's functional limitation with her right hand for weight was that "she should probably not lift more than five pounds just with the right hand" and she should "never lift something above the elbow out straight." (R. 583).

Despite the change in Dr. Hutson's opinion and the ALJ's acknowledgement that in determining Ms. Gonzalez's RFC he adopted Dr. Hutson's findings, the ALJ's decision does not in fact account for all of the limitations that Dr. Hutson thought appropriate and does not explain the failure to include the new limitations. Indeed, relying on Dr. Hutson's testimony at the first hearing, the ALJ indicated that for Ms. Gonzalez, "there should be no functional limitations in [her] use of her right hand." (R. 21). That reasoning is inconsistent with the entire record and ignores critical testimony elicited at the second hearing.

**II.**    **The ALJ did not properly evaluate Ms. Gonzalez's statements regarding the limiting effects of her symptoms and pain.**

As noted above, Dr. Hutson acknowledged at the second hearing that his opinion regarding Ms. Gonzalez's functional capacity did not take into account her statements about the limiting effects of her symptoms, including pain. According to Dr. Hutson, he did not consider her statements because he is not permitted to consider whether a claimant's subjective allegations are true:

> Q.    So if the judge asked you to give a functional capacity assessment of the Claimant and her subjective allegations of pain and parethesia is true, how would your functional capacity of the Claimant be different?
>
> Dr. Hutson:    They would not change.

11

Q. So the patient's ability to carry ten pounds occasionally and less than ten pounds frequently, if she had numbness and pain in her right hand, that wouldn't change?

A. You can't measure pain and numbness is not documented in this record more than she's saying that she has paresthesia.

Q. If we were taking her subjective allegations as true, would that change her limitations?

A. Yes, but I'm not allowed to do that per Social Security rulings.

(R. 576).

The court expresses no view regarding Dr. Hutson's statement that his medical opinion should not take into account the claimant's subjective statements, but an ALJ *must* consider the claimant's statements about her symptoms and how they affect her ability to work, 20 C.F.R. § 404.1529(a), and, if the ALJ decides they are not worthy of credence, explain the reasons he disbelieves her. By simply adopting Dr. Hutson's views, the ALJ necessarily rejected Ms. Gonzalez's statements.

To evaluate a claimant's credibility, an ALJ must consider the entire case record and examine a number of relevant factors. 20 C.F.R. § 405.1529(c)(3). Social Security Ruling 96-7p describes the appropriate process for evaluating credibility and requires an ALJ to consider a claimant's subjective complaints in light of the relevant objective medical evidence, as well as any other pertinent evidence regarding the claimant's daily activities, the severity and intensity of the claimant's pain or other symptoms, precipitating and aggravating factors, medication, treatment, and other measures to relieve the pain or other symptoms and their efficacy and side-effects, and any other factors relevant to functional limitations due to pain or other symptoms. *See* SSR 96-7p; 20 C.F.R. § 404.1529(c). It is not necessary for the ALJ to recite findings on every factor, but the ALJ must give reasons for the weight given to the claimant's statements so

that the claimant and subsequent reviewers have a fair sense of how the claimant's testimony was assessed. *Brindisi v. Barnhart,* 315 F.3d 783, 787-88 (7th Cir. 2003) (ALJ must comply with SSR 96-7p in making a credibility determination by articulating the reasons behind the determination).

Because the ALJ evaluates credibility by questioning and evaluating a live witness, the ALJ's credibility finding is reviewed deferentially and will not be set aside unless it is "patently wrong." *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008); *Luna v. Shalala,* 22 F.3d 687, 690 (7th Cir. 1994).

The ALJ's opinion discusses a number of reasons why he reached his conclusion that "the claimant's allegations concerning her impairments and their impact on her ability to work are not fully credible" (R. 23), but several of them are not supported by the record or do not fairly call into question her statements regarding the pain and loss of sensation on her right side that limit her right side, arm, and hand functioning. Nor did the ALJ acknowledge Dr. Hutson's testimony that the objective medical evidence regarding her right side and shoulder are consistent with her complaints regarding pain.

**A.    Dr. Hutson testified that Ms. Gonzalez's right upper extremity medical condition was consistent with pain complaints.**

Dr. Hutson was asked about common symptoms for a patient for whom there is medical evidence of "impingement from prominent acromial spur and mild to moderate degenerative and hypertropic changes in the acroclavical joint," the finding for Ms. Gonzalez based on a June 2006 x-ray of her right shoulder. He answered:

> Most of these patients complain of pain. There is more motion in the shoulder than any joint in the body. When they move the shoulder and it hurts, they bring in back into their side. Just as we see, she's in a sling today. If you don't move the shoulder, it will become completely stiff, what's known as frozen shoulder.

(R. 580).  He was also asked about common symptoms and limitations for a patient who has

"irregular calcification," also as noted in Ms. Gonzalez's medical records.  He answered:  "Pain

and decreased range of motion."  (R. 581).  This testimony undermines the ALJ's conclusion that

Ms. Gonzalez's statements about her symptoms "are not credible" to the extent they are

inconsistent with the RFC, since in fact Dr. Hutson acknowledged that pain and decreased range

of motion are consistent with the medical findings, even though he did not account for them in

his assessment of Ms. Gonzalez's functioning.  The ALJ had an obligation to assess Ms.

Gonzalez's statements about pain and range of motion; by merely adopting Dr. Hutson's

assessment (R. 21), which ignored that evidence, the ALJ erred.

> **B.** **The ALJ's evaluation of Ms. Gonzalez's daily living activities**
> **and medications lacks support.**

The ALJ's discussion regarding Ms. Gonzalez's daily living activities and her medication

also have questionable bases, and therefore also undermine his credibility analysis.

He found that two factors weighed against accepting as strong evidence of disability Ms.

Gonzalez's description of her daily living activities:  "First, allegedly limited daily living

activities cannot be objectively verified with any reasonable degree of certainty.  Secondly, even

if the claimant's daily activities are truly as limited as alleged," it is difficult to attribute them to

her medical condition "as opposed to other reasons, in view of the relatively weak medical

evidence[2] and other factors discussed in this decision."  (R. 21).  The first factor is not a sensible

---

[2]     The ALJ's opinion is not clear about the medical evidence he deemed to be "weak."   The
court notes here that with respect to right side hand, elbow, arm, and shoulder functioning, Ms.
Gonzalez's medical symptoms seem to have begun manifesting themselves in 2005.  (*See* R.
161, an April 25, 2005 medical record reporting new complaints of right arm pain and numbness
that began two months before).  The x-rays documenting physical signs and symptoms consistent
with her right side pain, and decreased strength, sensation, and range of motion occurred in June
2006 and October 2007.  These dates are after the consultative examination in December 2004,

reason for doubting a claimant, and the Commissioner does not attempt to defend it as appropriate. (*See* Commissioner's brief, Dkt. 25, at p. 20). Although not entirely clear, it appears that the ALJ may envision something like a "day-in-the-life" or surveillance video recording to provide "objective" verification of daily activities. The administrative record regarding daily activities is not limited to Ms. Gonzalez's subjective statements. It includes, as is typical, a questionnaire completed by Ms. Gonzalez's daughter regarding her observations of her mother's daily activities. (*See* R. 94-104). The second reason is too vague to permit the court to review it. The ALJ may be suggesting that because he has found Ms. Gonzalez not credible, based on other reasons outlined in the decision, her statements about daily living are not credible as well. Although a reasonable assessment, the effect is that the daily living activities "factor" does not augment the credibility analysis; it only reflects a credibility determination already made.

The ALJ indicated his belief that Ms. Gonzalez's complaints regarding pain are exaggerated because she "has generally not taken narcotic based pain relieving medications in spite of her allegations of quite limiting pain; she generally took nonsteroidal anti-inflammatories." (R. 20). Yet that comment is not a fair one in light of the record. The record citations provided by the ALJ do not support the statement, but in general reference physical therapy appointments attended or missed by Ms. Gonzalez in 2004. And in fact Ms. Gonzalez's records show that she was prescribed Darvocet, which is a narcotic-based pain reliever[3] (*see* 2005 medical records, R. 158, R. 161, R. 163), and later was prescribed Vicodin in late 2007, a

---

which reported muscle strength as 5/5 throughout and gross movement and fine finger manipulation as normal. (*See* ALJ's opinion at R. 19-20).

[3] "Darvocet contains a combination of propoxyphene and acetaminophen. Propoxyphene is in a group of drugs called narcotic pain relievers." http:\\www.drugs.com/darvocet.html (last visited September 26, 2011).

medication that "seemed to help" and was to be "represcribe[d]." (R. 143). Vicodin, like Darvocet, has a narcotic base.[4]

The court does not suggest that the ALJ's discussion of his reasons for finding Ms. Gonzalez as not "fully credible" is without any support. It was proper for the ALJ to consider that: (a) she gave inconsistent reasons for leaving her seat-belt sewing job, sometimes stating that the company filed bankruptcy, and other times stating that her physical condition prevented her from continuing to work; (b) she was discharged from physical therapy in December 2004 that was designed to treat her back pain because she missed five consecutive appointments; (c) a doctor who examined her in January 2005 for back pain stated that two tests were false positives and she seemed to walk without pain when she did not believe the doctor was observing her; and (d) another physician in February 2005, who also saw Ms. Gonzalez for back pain, described her psychiatric presentation as "dramatic," suggesting exaggerated symptoms (*See* R. 21).

However, with the flaws in the ALJ's credibility analysis—particularly as it relates to discounting her credibility regarding the pain and limitations she experiences as a result of her right side shoulder problems—the court cannot be assured that the ALJ would have been as critical of Ms. Gonzalez's credibility without the commentary regarding her daily living activities, medication, and the purported disconnect between the objective medical evidence and her pain and numbness symptoms that was largely refuted by Dr. Hutson's testimony at the second hearing.

---

[4]     "Vicodin (Vicodine) is a combination of a narcotic analgesic (hydrocodone) and a non-narcotic analgesic (acetaminophen) used for the relief of moderate to moderately severe pain." http:\\www. drugs.com/vicodine.html (last visited September 26, 2011).

**III.** **The ALJ should also reevaluate his analysis of the weight to give the opinions of Dr. Richardson and Mr. Schuetter, the physical therapist.**

Ms. Gonzalez also challenges the ALJ's RFC because it cannot be reconciled with the opinions by two of Ms. Gonzalez's treating sources in their late 2007 reports regarding Ms. Gonzalez's functional capacity.

Mr. Schuetter is a physical therapist who performed a functional capacity evaluation on December 27, 2007. He found significant deficits in Ms. Gonzalez's right upper extremity and hand functioning that would prevent Ms. Gonzalez from performing the functions described by Dr. Hutson at the first hearing and as modified at the second hearing, noting too that because of the pain she reported, he and Ms. Gonzalez "could not effectively do much work with [the right] arm/hand." (R. 148). The ALJ dismissed Mr. Schuetter's functional evaluation as not supported by objective medical evidence and because "all he can do is report what the patient does," apparently suggesting that Ms. Gonzalez must have exaggerated her pain and limitations and snookered Mr. Schuetter. The record, however, is not so unkind to Ms. Gonzalez because according to Mr. Schuetter, he believed—based on his overall testing and observances—that Ms. Gonzalez "gave maximum, consistent effort." (R. 148). The ALJ did not reconcile Mr. Schuetter's opinion about Ms. Gonzalez's efforts with his own apparent belief that Ms. Gonzalez had exaggerated her symptoms during Mr. Schuetter's functional evaluation.[5] *See Kasarsky v. Barnhart,* 335 F.3d 539, 543 (7th Cir. 2003) ("ALJ must confront evidence that does not support his conclusion and explain why it was rejected").[6]

_____

[5]     Here too, the court notes that the ALJ did not take into account Dr. Hutson's testimony at the second hearing that the objective medical evidence was consistent with patients' reports of pain.

[6]     It appears that the ALJ's criticism of Mr. Schuetter's functional capacity evaluation because "all he can do is report what the patient does" parrots a comment made by Dr. Hutson. (R. 571). Yet Dr. Hutson then testified that Ms. Gonzalez's subjective complaints of pain and

The ALJ's rejection of Dr. Richardson's opinion regarding Ms. Gonzalez's functional limitations is flawed too, though not in all respects. The court rejects Ms. Gonzalez's argument that Dr. Richardson's opinion was entitled to controlling weight as a treating source. Dr. Richardson's opinion was the result of only two examinations, not enough of a treating history to permit her opinion to be given controlling weight. 20 C.F.R. § 404.1502 ("Nontreating source means a physician . . . who has examined you but does not have, or did not have, an ongoing treatment relationship with you"). It was also not improper for the ALJ to give less weight to Dr. Richardson's views when her specialty is in internal medicine, and not orthopedics, and because she was a resident.[7] 20 C.F.R. § 404.1527(d)(5) (medical provider's specialization properly considered in determining weight to give her opinion).

But the ALJ did not acknowledge that Dr. Hutson found that if Ms. Gonzalez's subjective complaints regarding pain were credited, then Dr. Richardson's evaluation of Ms. Gonzalez's functional capacity was fully consistent with the medical record, and he could not point to any specific objective medical evidence that would then call her opinion into question.

> Q.    And could you point me to some areas where you don't, in the record where you don't believe that Dr. Richardson's report is consistent with the record.

paresthesia or numbness in the hands "are possible given the evidence in the record," and that he "had no reason to believe [that Ms. Gonzalez is a malingerer] based on this record." (R. 575). Dr. Hutson also agreed that the tingling sensation that Ms. Gonzalez feels in some of the fingers on her right hand can be tied to the ulnar nerve problem described in her medical records. (R. 539; 546-547).

[7]     The court notes here that Dr. Richardson, the internal medicine resident, completed the functional capacity form because Dr. Dicke, Ms. Gonzalez's orthopedist, apparently would not complete the form. The ALJ's opinion mentions that Dr. Dicke "refused to complete a medical assessment." (R. 22). If the ALJ used Dr. Dicke's "refusal" as evidence to doubt the severity of Ms. Gonzalez's right side upper extremity (shoulder, arm, elbow, hand) condition or to doubt Ms. Gonzalez's credibility, he had no basis for doing so. The ALJ did not get an explanation from Dr. Dicke regarding his "refusal," and as Dr. Hutson acknowledged, "a lot of physicians . . . refuse to fill out forms simply because of time or they don't feel they've seen the patient enough." (R. 569).

Dr. Hutson:    Well, I'd ask you to point those things out to me.  I don't have these things specifically listed in every absolute detail.

Q.    So it's your opinion based on the record as a whole and not based on anything that you can specifically recall?

A.    Yes.

Q.    Okay.  Doctor, if the patient's subjective allegations of pain are taken as credible and the report of Dr. Richardson is not only on the clinical findings but also on the subjective findings, would you believe that Dr. Richardson's report was consistent with the record as a whole?

A.    Yes.

(R. 570).

This testimony highlights, once again, the gaping holes in the ALJ's RFC determination: It purportedly adopted wholesale Dr. Hutson's opinion as formulated at the first hearing, but ignored the changes he made to his opinion at the second hearing.  And it ignored the fact that Dr. Hutson's opinions did not take into account Ms. Gonzalez's statements regarding the limiting effects of her pain and other symptoms even while he agreed that Ms. Gonzalez's reported pain and numbness symptoms were consistent with objective medical evidence.

The court finds that the ALJ's determination of Ms. Gonzalez's RFC is not supported by substantial evidence, is plagued by a flawed credibility analysis, and is tainted by a flawed evaluation of the functional capacity reports of Dr. Richardson and Mr. Schuetter.  His RFC determination must be revisited on remand.

**IV.    The ALJ's decision that Ms. Gonzalez was capable of performing her past relevant work is not supported by substantial evidence.**

The ALJ relied on the testimony of vocational expert Stephanie R. Archer, given at both hearings, in deciding that Ms. Gonzalez's RFC allowed her to perform her past relevant work as a child care monitor, a sewing machine operator, and a packer.  The VE explained that, except

for the job of child care monitor, Ms. Gonzalez could perform this past work *both* as she had actually performed it and as it is performed in the national economy. It is not necessary that Ms. Gonzalez is able to perform her past relevant work in the manner she had performed it *and* in the manner it is generally performed in the national economy—if she can do either, then she is not disabled. 20 C.F.R. § 404.1560(b)(2); Social Security Ruling 82-61; *Getch v. Astrue,* 539 F.3d 473, 482 (7th Cir. 2008) (even if the functional demands of the claimant's former job are greater than his capability, if he can perform the demands of that job as it is generally performed, he is not disabled).

### A. The ALJ's decision that Ms. Gonzalez's work as a packer is past relevant work is not supported by substantial evidence.

Ms. Gonzalez worked as a packer at Henry Schein, Inc. in Indianapolis, a distributor of healthcare products to medical, dental, and veterinary practices. She worked at Henry Schein for two months in 2004. The ALJ found that the work "represented an unsuccessful work attempt," a finding that is supported by the administrative record. (*See* R. 120). Under the SSA's regulations and policy rules, past work experience is relevant "when it was done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." *E.g.,* 20 C.F.R. § 404.1565(a). Ms. Gonzalez argues that the ALJ could not determine both that her job as a packer was an unsuccessful work attempt and that it qualified as past relevant work. The Commissioner does not challenge the argument that Ms. Gonzalez's short-term and low earnings at Henry Schein mean that her job as a packer cannot constitute past relevant work. Instead, the Commissioner claims that the ALJ's error was harmless because he also decided that her work as a sewing machine operator and child care monitor was past relevant work consistent with her RFC. The court will thus turn to those jobs.

**B.** **The ALJ's decision that Ms. Gonzalez's work as a sewing machine operator is past relevant work is not supported by substantial evidence.**

The ALJ found that the job of sewing machine operator is a sedentary-level job, both as Ms. Gonzalez had performed it and as it is performed in the national economy. (R. 23). The VE's testimony was crystal clear however, that, as described in the Dictionary of Occupational Titles, the job of sewing machine operator is at the light level of exertion. (R. 548, 552-553). Ms. Archer further testified that although the DOT classifies the job as light, sewing machine operator is "a generic term and it would cover from a seatbelt to uniforms," and thus *some* sewing machine operator jobs are performed at the sedentary level in the national economy. (R. 552-553). Ms. Gonzalez argues that because the VE's classification of the job is not consistent with the DOT, it was not appropriate for the ALJ to find that Ms. Gonzalez's RFC, which is at a modified sedentary level, is consistent with the job as it is usually performed in the national economy for purposes of the step four analysis. The Commissioner does not attempt to challenge this argument, and rather relies on the argument that Ms. Gonzalez *actually* performed her job as a sewing machine operator at the sedentary level consistent with the ALJ's RFC.[8]

The administrative record does not support the finding that Ms. Gonzalez performed her sewing machine operator job at the sedentary level consistent with her RFC, or at least there is

---

[8] The Commissioner states: "[R]egardless of whether the VE's testimony conflicted with the DOT, Plaintiff ignores that at Step Four, an ALJ may find a claimant not disabled if she can perform her past work either as it is generally performed in the national economy *or* as she actually performed it. . . . . Here, the VE testified that Plaintiff's work as a sewing machine operator was sedentary as she performed it and as performed in the national economy. . . . Plaintiff's argument therefore fails." (Commissioner's brief, Dkt. 25, at p. 25) (emphasis in original). The court notes here that when referring to the comparison between a claimant's functioning and the demands of past work as performed in the national economy, the SSA regulations require the comparison to be made to the way in which the work is "ordinarily required by employers," or "usually performed," or "generally required" throughout the national economy. *See* SSR 82-61 "Titles II and XVI: Past Relevant Work – The Particular Job or the Occupation as Generally Performed."

21

evidence that the ALJ did not address that is wholly inconsistent with such a finding. Ms. Gonzalez's work as a sewing machine operator was at an auto parts manufacturing facility at which she worked from November 1997 to May 2003. (R. 121). She assembled car seat belts either on an assembly line or using a machine. (*Id.*). According to an SSA form questionnaire completed by Ms. Gonzalez, this job required lifting and carrying boxes and seatbelts, constant reaching (8 of 8 hours), and the frequent (from 1/3 to 2/3 of the workday) lifting of items weighing 10-20 pounds. (*Id.*). Whether or not the job was "sedentary" in terms of the amount of time Ms. Gonzalez sat, or stood and walked, these lifting requirements cannot be performed consistent with Ms. Gonzalez's RFC—either the RFC used by the ALJ which allowed only occasional lifting of anything over ten pounds and frequent lifting of anything under ten pounds (which the court has found is not supported by substantial evidence) or the modified RFC about which Dr. Hutson testified, prohibiting frequent lifting with the right hand of weight over five pounds and requiring lifting to occur at table level and with elbows bent). The ALJ did not address this evidence. *See Kasarsky,* 335 F.3d at 543 (ALJ must confront evidence that does not support conclusion and explain why the evidence was rejected).

Nor is the court convinced that the VE took into account whether the manner in which Ms. Gonzalez actually had performed her job was possible given all of the limitations that Dr. Hutson described at the second hearing. Although she acknowledged Dr. Hutson's new qualifications at the second hearing of "lifting and/or carrying ten pounds occasionally, five pounds frequently because of her right shoulder impairment, . . . [and] not have her arms outstretched in doing the lifting and/or carrying," the only information she wanted to know about Ms. Gonzalez's past work was whether they were sedentary jobs. (R. 586). The court doubts the worth of that single qualifier in assessing whether the restrictions about which Dr. Hutson

testified would still permit Ms. Gonzalez to do the sewing machine operator work as she had performed it.  *See Nolen v. Sullivan,* 939 F.2d 516, 518 (7th Cir. 1991) ("the ALJ must list the specific physical requirements of the previous job and assess, in light of the available evidence, the claimant's ability to perform these tasks").

Because the ALJ's decision that Ms. Gonzalez could perform her past work as a sewing machine operator at the auto parts manufacturing facility consistent with her RFC fails to address conflicting, material evidence, it cannot stand.

### C.     The ALJ's decision that Ms. Gonzalez could perform her past relevant work as a child care monitor is not based on a sufficiently complete record.

We are left with Ms. Gonzalez's past work as a child care monitor.  Based on Ms. Gonzalez's description of her work taking care of children, and the VE's testimony, the ALJ found that Ms. Gonzalez performed the work at a sedentary and unskilled level but that it is performed at the medium and semi-skilled level in the national economy, functioning inconsistent with Ms. Gonzalez's RFC.  (R. 23).  According to the administrative record, Ms. Gonzalez took care of children for pay at two separate periods of time, in 1995 through 1997, and in 2005 and 2006.  The ALJ's opinion specifically mentions *only* the 2005-2006 child care work, noting that Ms. Gonzalez and her daughter watched two neighbor children, ages 10 and 12, and that Ms. Gonzalez did no lifting, or carrying, or teaching as part of her duties.  (R. 16). The work in 2005-2006 was not at the substantial gainful employment level.  (R. 16).  Thus, as with Ms. Gonzalez's work for two months in 2004 as a packer at Henry Schein, her work in 2005-2006 as a child care monitor is not, as a matter of SSA regulations, past relevant work.  20 C.F.R. § 404. 1565(a) (past work experience must have been at the level of substantial gainful activity).

The Commissioner argues that in classifying child care monitor as past relevant work, the ALJ was referring to Ms. Gonzalez's child care work in 1995-1997, not in 2004-2006. The transcript of the administrative hearing supports the Commissioner's argument. The ALJ's questioning of the VE at the first hearing regarding Ms. Gonzalez's child care work related only to her work in 1995-1997:

> ALJ:   I would like you to tell me the proper titles, skill and exertional levels of her past work. '95 through '97 she was engaged in child care. The proper job title, please?
>
> VE:   Childcare monitor
>
> ALJ:   Skill and exertional level the way she performed the job?
>
> VE:   She indicates she performed the job primarily at the sedentary level.
>
> ALJ:   And the skill level, please?
>
> VE:   Un-skilled the way she performed it.
>
> ALJ:   In the national economy, according to the Dictionary of Occupational Titles, how was that performed?
>
> VE:   Medium and semi-skilled, SVP three.
>
> ALJ:   But she performed it un-skilled, correct?
>
> VE:   Yes, sir.
>
> ALJ:   And sedentary because of no lifting and/or carrying?
>
> VE:   That's correct and little walking.

(R. 547-548).

The VE's conclusion (adopted by the ALJ) that Ms. Gonzalez never did any "lifting and/or carrying" in this job and performed it at the sedentary level (as that term is used in a generalized way) is not supported by substantial evidence in the record. The work Ms. Gonzalez performed in taking care of children in 1995-1997 was not addressed in detail, but only in the

most general terms.  The whole of Ms. Gonzalez's testimony (through a Spanish-English language interpreter) regarding this job was that she took care of three children (ages two, four, and six) with help from her daughter.  She "[took] care of them, [fed] them and look[ed] at them," changed diapers, and as to whether she lifted or carried, she answered, "No, the mother would bring them" (R. 514) and she did not have to physically pick them up because "they would bring them by 3:30 and by 3:30, my daughter was already there for those young kids." (R. 533).  It is not reasonable to conclude from this testimony that taking care of three young children did not involve any lifting or any carrying—indeed, it appears that Ms. Gonzalez may have misunderstood the question as referring to responsibility for transporting the children. Furthermore, it is illogical to believe that a child care worker can perform that job without lifting and carrying; it is simply impossible routinely to change diapers or comfort a small child without lifting and carrying.  For the ALJ (or the VE) reasonably to reach the conclusion that Ms. Gonzalez actually performed her job without the need to lift or carry required a more fully developed record, with detailed information about the function-by-function demands of Ms. Gonzalez's child care work on a regular basis in 1995-1997.

Social Security Regulation 82-62, titled "Titles II and XVI: A Disability Claimant's Capacity to do Past Relevant Work, in General," demands that "careful consideration" be given to determine the specific physical (and mental) requirements of a previous job to "assure" that the claimant actually is still able, with her RFC, to perform the functions required in the prior work.  *See also Nolen v. Sullivan,* 939 F.2d 516, 518 (7th Cir. 1991) ("the ALJ must list the specific physical requirements of the previous job and assess, in light of the available evidence, the claimant's ability to perform these tasks").  The ALJ did not carefully assure that he had all the relevant facts necessary to assess the functional demands of Ms. Gonzalez's 1995-1997

work.  His conclusion that her RFC was consistent with that work is therefore not supported by substantial evidence.

This is particularly so, in light of Dr. Hutson's testimony at the second hearing regarding additional functional limitations (e.g., frequent lifting with the right hand limited to five pounds and all lifting performed at table level with the elbows bent).  Although the VE stated that the additional restrictions did not change her views that past work could be performed, the only information she considered in giving that opinion was that the past work was "sedentary."  (R. 586:  VE: "Judge, were [the past jobs as childcare monitor, sewing machine operator and packer] sedentary?;  ALJ: Correct.;  VE: Dr. Hutson's testimony today would not change my testimony.")  As the Seventh Circuit has held, "an ALJ cannot describe a claimant's job in a generic way—[such as] "sedentary"—and conclude, on the basis of the claimant's residual capacity, that she can return to her previous work."  *Nolen,* 939 F.2d at 518 (citing *Strittmatter v. Schweiker,* 729 F.2d 507, 509 (7th Cir. 1984)).[9]

On remand, any determination that Ms. Gonzalez was not disabled before her last-insured status date of December 31, 2009, because of an ability to perform past relevant work (whether as a child care monitor or sewing machine operator) must carefully comply with SSR 82-62.  It requires the gathering of "adequate documentation of past work," described as follows:

> Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations.  Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate.

---

[9]    *Nolen's* principle that a generic term like "sedentary" is insufficient does not necessarily apply where the ALJ considered the claimant's specific past job and its specific demands.  *See Tolbert v. Astrue,* 2011 WL 883927 at *14 (S.D. Ind. March 11, 2011) (citing *Cohen v. Astrue,* 258 Fed. Appx. 20, 28 (7th Cir. 2007)).  Even as later construed by the Seventh Circuit, *Nolen* fits this case because the only factual basis for the VE's conclusion, which was adopted by the ALJ, that Ms. Gonzalez could perform her past work based on Hutson's new restrictions was that the prior jobs were "sedentary."

This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source. Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience.

## Conclusion

For the foregoing reasons, the court REVERSES and REMANDS the decision of the Commissioner under sentence 4 of 42 U.S.C. § 405(g) for further proceedings consistent with this entry.

So ORDERED.

Dated: _____09/29/2011_____

_Debra McVicker Lynch_
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

Jennifer Michelle Hess
PETIT HESS PETIT & SLACK
jenhessatty@aol.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov